FILED

October 29, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003038492

1  ANTHONY ASEBEDO (State Bar No. 155105)
**MEEGAN, HANSCHU & KASSENBROCK**
2  Attorneys at Law
11341 Gold Express Drive, Suite 110
3  Gold River, CA 95670
Telephone: (916) 925-1800
4  Facsimile: (916) 925-1265

5  Attorneys for Susan K. Smith,
Chapter 7 trustee
6

7

8              UNITED STATES BANKRUPTCY COURT

9              EASTERN DISTRICT OF CALIFORNIA

10                    [Sacramento Division]

11

12  In re:                          Case No. 09-37310-C-7
                                     Docket Control No. MHK-13
13  HACKARD & HOLT,
                                     DATE: November 30, 2010
14                                   TIME: 9:30 a.m.
                         Debtor.     DEPT: C (Courtroom 35)
15                                   Hon. Christopher M. Klein

16          <u>**TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE**</u>

17          Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), Susan K. Smith (the

18  "Trustee"), as trustee of the above-captioned chapter 7 estate of Hackard & Holt, a

19  California general partnership (the "Debtor"), hereby moves the court for an order

20  approving a compromise between, on the one hand, the Trustee and secured creditor

21  LawFinance Group, Inc., as agent for LFG National Capital, L.L.C. ("LFG"), and, on the

22  other, Dexter & Dexter and E.L. Anderson & Associates, P.A. (collectively, "Dexter").

23  In support of the motion, the Trustee respectfully represents as follows.

24                          **I. SUMMARY**

25          Before it filed its chapter 7 petition, the Debtor was a law firm that among other

26  things represented mass-tort claimants. LFG or its predecessor in interest was the

27  Debtor's lender, and held a security interest in essentially all of the Debtor's assets,

28  including accounts. Under the terms of a letter agreement that provided for the sharing

aa:\MHK-13 compromise Dexter mot

1  of attorneys' fees between them, Dexter referred four clients to the Debtor, but the

2  Debtor had not completed legal services for the four clients before the Debtor ceased

3  operations. The claims of the four clients were among a number of such claims

4  prosecuted by Napoli Bern Ripka & Associates ("Napoli Bern"), a nationally recognized

5  law firm that concentrates on plaintiff's personal injury litigation, pursuant to an

6  agreement approved by this court under which Napoli Bern was authorized to act as co-

7  counsel with the Debtor (which of course was no longer operating).

8       When the four claims described above were settled post-petition through Napoli

9  Bern's efforts, a dispute arose between the Trustee and LFG, on the one hand, and

10 Dexter, on the other, regarding entitlement to resulting attorneys' fees. The parties

11 have reached a compromise under which the dispute is resolved and which includes a

12 general mutual releases of claims. The Trustee requests that the court approve the

13 compromise under Federal Rule of Bankruptcy Procedure 9019(a).

14 **II. BACKGROUND**

15 A.    The Debtor's Chapter 7 Case and its Former Business.

16      On August 16, 2009 (the "Petition Date"), the Debtor filed a voluntary petition

17 for relief under chapter 7 of the United States Bankruptcy Code. The Trustee was

18 appointed as trustee of the Debtor's bankruptcy estate, and continues to serve as

19 trustee.

20      Before the Petition Date, the Debtor operated a law office. The Trustee is

21 informed that the Debtor's attorneys provided legal services of various types, including

22 to plaintiffs in mass product-liability claims, specifically claims arising out of the use of

23 diet and other drugs. The Debtor ceased operation of its business in or about July

24 2009. See Declaration of Susan K. Smith ("Smith Declaration"), submitted herewith.

25      As of the Petition Date, the Debtor, pursuant to contingency-fee arrangements,

26 represented a number of plaintiffs in regard to claims against pharmaceutical companies.

27 Hereinafter, the various contingency claims being handled by the Debtor as of the

28 Petition Date will be referred to collectively as the "Claims."

1     The Debtor's schedules identify the Claims in general terms on the B-schedule

2 and Exhibit B21 thereto. In its schedules, the Debtor also advised of the existence of

3 fee-sharing arrangements with co-counsel in regard to the fees it anticipated it would

4 recover on account of a number of the Claims.

5     The Trustee learned that in regard to some of the Claims, the Debtor had

6 become counsel of record as a result of entering various co-counsel agreements with

7 other law firms, and that the Debtor obtained such agreement by way of "referrals"

8 from other law firms. Under various such agreements, the Debtor and other law firms

9 would agree to share attorneys' fees that might be earned in connection with the diet-

10 drug claims of designated clients, and in most instances would also agree in regard to

11 nature and amount of services that each firm was to provide to the relevant client or

12 clients. See Smith Declaration.

13     Shortly after the Petition Date, this court approved a written agreement (the

14 "Bern Agreement") between Napoli Bern and the Trustee, under which Napoli Bern

15 became associated as counsel with the Debtor in regard to a number of the Claims and

16 was to provide the services necessary to bring them to conclusion. Some of the

17 Claims subject of the Bern Agreement were already subject to an agreement between

18 Napoli Bern and the Debtor in regard to shares of attorneys' fees, and others were not.

19 The Bern Agreement, however, expressly provides that Napoli Bern was to earn specific

20 shares of attorneys' fees in connection with various groups of the Claims. See Smith

21 Declaration.

22     In regard to a group of the Claims designated as the "PPH cases," the Bern

23 Agreement provides as follows in regard to the allocation of attorneys' fees that might

24 be earned on such claims:

25

26
    With respect to the nine (9) PPH cases . . . the attorneys' fees shall be
split as follows: sixty-six and two-thirds percent (66-2/3%) of the net
legal fees to [Napoli Bern]; [Napoli Bern] shall have no responsibility for

27
    payment of any referral fees to [the Debtor] or to any other person or
entity out of its share of the fees; and the [Debtor's bankruptcy estate]

28
    shall receive thirty-three and one-third percent (33-1/3%) of the net legal

fees, and shall be solely responsible for paying any referral fees that may exist out of its share of the net attorneys' fees.

Among the Claims subject to the Bern Agreement were four matters subject to an October 3, 2007 letter agreement (the "Letter Agreement") between Dexter and the Debtor. A true and correct copy of the Letter Agreement is submitted herewith as an exhibit to the Smith Declaration.[1] The Letter Agreement designates the Debtor as lead counsel and states that each firm will provide designated services to the relevant clients in connection with the four claims described therein (collectively, the "Four Claims"). The Letter Agreement provides as follows in connection with attorneys' fees:

> [The Debtor] shall receive Two Thirds (2/3) of the net attorney's fee and [Dexter] shall share in the remaining One Third (1/3) of the net attorney's fee from the resolution and/or settlement of any claim or lawsuit . . . of the clients listed above. If [the Debtor] associates other counsel, each party shall share in the associated counsel's fees in equal proportion to the fee division expressed above.

Among others, the Four Claims were PPH cases settled through Napoli Bern's efforts. This occurred sometime in late 2009. Under the Bern Agreement, retired Judge Richard L. Gilbert ("Judge Gilbert") was authorized by this court to continue his duties as a Special Master appointed by the United States District Court to disburse the proceeds of many of the Claims, including the Four Claims. Accordingly, Judge Gilbert proposed to pay out attorneys' fees to interested parties, including Napoli Bern, but the Trustee objected to the share that Judge Gilbert proposed to pay to Dexter. As a consequence, with the parties' agreement, Judge Gilbert distributed attorneys' fees to Napoli Bern, but retained the sum of $273,333.32 (the "Disputed Fees") pending resolution of a dispute between Dexter, on the one hand, and the Trustee and LFG on the other, in regard to the bankruptcy's estate's entitlement to a share thereof. The Disputed Fees consist of 1/3 of all attorneys' fees payable in connection with the Four Claims. See Smith Declaration.

---

1. A copy of the letter agreement was also attached to the Proof of Claim that was filed on behalf of Dexter in the Debtor's chapter 7 case, on March 10, 2010.

1    Dexter asserted that it is entitled to the entirety of the Disputed Fees. It alleged

2    that it did not receive service of the motion by which the Trustee obtained this court's

3    approval of the Bern Agreement, and thus that its terms would not bind Dexter or

4    otherwise reduce Dexter's entitlement to fees under the Letter Agreement. As such,

5    Dexter argued that while Bern might be entitled to two-thirds of the attorneys' fees

6    earned in the Four Claims, the two-thirds amount consisted of the Debtor's share under

7    the Letter Agreement, leaving the remaining one-third amount payable in its entirety to

8    Dexter. Dexter also raised other objections in regard to the Bern Agreement, including

9    that it was not authorized under applicable rules of professional conduct for attorneys.

10   By contrast, the Trustee and LFG asserted that the Debtor's bankruptcy estate is

11   entitled to two-thirds of the Disputed Fees, based on the additional term in the Letter

12   Agreement providing that where the Debtor associates other counsel, Dexter and the

13   Debtor are to share in payment of the associated counsel's fees in the proportion (1/3

14   to Dexter and 2/3 to the Debtor) stated in the Letter Agreement. The Trustee argued

15   that the Bern Agreement was inapplicable to the matter and did not limit Dexter's

16   rights, and as such Dexter had no standing to object to the terms of the Bern

17   Agreement.

18   The parties have reached a compromise regarding their respective shares of the

19   Disputed Fees. For the reasons stated below, the Trustee request the court's approval

20   of the compromise under Rule 9019.

21                           **III. TERMS OF THE COMPROMISE**

22   The Trustee and LFG, on the one hand, and Dexter, on the other, wish to

23   promptly and with minimum expense resolve the disputes described above, and have

24   entered a written agreement that provides for the compromise of those disputes. The

25   terms of the compromise are set forth in the written Settlement Agreement between

26   the Trustee, LFG, and Dexter. A copy of the Settlement Agreement is submitted

27   / / /

28   / / /

aa:\MHK-13 compromise Dexter mot

herewith as an exhibit to the Smith Declaration.[2]  The Agreement provides generally as follows, subject to this court's approval:

1.      Dexter shall be paid $148,431.01 of the Disputed Fees, and the Trustee on behalf of the Debtor's bankruptcy estate shall be paid $124,902.31 of the Disputed Fees.  The proportion of the Disputed Fees to be paid is thus 55% to Dexter and 45% to the estate.

2.      To the extent interest has accrued on the Disputed Fees, 55% of such interest shall be paid to Dexter, and 45% to the estate.

3.      Judge Gilbert is to disburse the amounts described above.

4.      LFG and the Trustee, on the one hand, grant a general release of claims to Dexter, on the other.  Dexter also grants a general release of claims to LFG and the Trustee, on the other

There are other terms stated in the Agreement, and the points above are merely a summary.  Creditors are urged to review the copy of the Agreement submitted with this Motion.

### III. RELIEF REQUESTED BY THE TRUSTEE

The Trustee seeks approval of the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019(a).  "The bankruptcy court has great latitude in approving compromise agreements, but the court may approve a compromise only if it is 'fair and equitable.'"  In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988) (citations omitted). The Ninth Circuit has outlined the following factors to be considered in reviewing a proposed settlement:

(a)    The probability of success in the litigation;

(b)    The difficulties, if any, to be encountered in the matter of collection;

(c)    The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

---

2. The copy submitted as an exhibit to the Smith Declaration has signatures for three of the four signatories.  The Trustee will file a copy with all signatures upon receipt.

1       (d)     The paramount interest of the creditors and a deference to
               their reasonable views in the premises.

2

     Id. (quoting In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986)).

3

4        Under the Settlement Agreement, the Debtor's estate will economically and

5 quickly resolve the dispute in regard to the share of attorneys' fees to be obtained by

6 the bankruptcy estate. There exists a bona fide dispute between the parties regarding

7 the interpretation of the terms of the Letter Agreement, in a case such as this in which

8 the Debtor, through the Trustee, associated Napoli Bern as counsel for the Four Claims

9 and in which Napoli Bern completed the necessary legal services to resolve them.

10 Dexter argues that the Trustee obtained new counsel in the Debtor's stead, and agreed

11 with Napoli Bern pay its two-thirds share of attorneys' fees to Napoli Bern in connection

12 with all of the PPH cases, including the Four Claims, and that the Trustee had no

13 authority to do so and thereby reduce the share originally negotiated by Dexter with the

14 Debtor. The Trustee argues that the Letter Agreement authorized and permitted the

15 Trustee, standing in the Debtor's shoes, to associate Napoli Bern, and the Letter

16 Agreement dictates that Dexter and the Debtor (and thus its bankruptcy estate) would

17 share the expense of so doing in the proportion stated.

18        If the disputes resolved by the Agreement were instead litigated, the parties

19 would likely be required to bring testimony so that the parties' intent under the Letter

20 Agreement could be determined. This is a difficult factual question. In addition, should

21 the court agree with Dexter's position that the Bern Agreement improperly sought to

22 limit Dexter's rights, the parties would likely have to brief the legal issues associated

23 with this issue. This would involve lengthy and expensive litigation, with uncertain

24 results. While the matter of collection is not a factor in this case, the probability of

25 success by the Trustee is uncertain, and the costs and delays are considerable. The

26 Trustee believes that creditors of the Debtor are unlikely to object to the compromise,

27 given the factors discussed above.

28 / / /

1    In light of these facts, the Trustee believes that the Agreement is fair and

2  equitable under the <u>Woodson</u> factors.

3                              **IV. CONCLUSION**

4       For the reasons outlined above, the Trustee requests that the court enter an

5  order approving the Settlement Agreement on the terms and conditions contained

6  therein, and providing for such other and further relief as the court deems proper.

7  Dated: _10.29.10_            MEEGAN, HANSCHU & KASSENBROCK

8

9

10                       By: _____
                              Anthony Asebedo
11                            Attorneys for the Trustee