FILED
October 29, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003038493

ANTHONY ASEBEDO (State Bar No. 155105)
**MEEGAN, HANSCHU & KASSENBROCK**
Attorneys at Law
11341 Gold Express Drive, Suite 110
Gold River, CA 95670
Telephone: (916) 925-1800
Facsimile: (916) 925-1265

Attorneys for Susan K. Smith,
Chapter 7 trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

[Sacramento Division]

| | |
|---|---|
| In re:<br><br>HACKARD & HOLT,<br><br>Debtor. | Case No. 09-37310-C-7<br>Docket Control No. MHK-13<br><br>DATE: November 30, 2010<br>TIME: 9:30 a.m.<br>DEPT.: C (Courtroom 35)<br>Hon. Christopher M. Klein |

**DECLARATION OF SUSAN K. SMITH IN SUPPORT OF
TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE**

I, Susan K. Smith, hereby declare:

1. I am over eighteen years of age. The following is true of my own knowledge, and, if called as a witness, I could and would competently testify thereto.

2. I am the trustee in regard to the above-captioned chapter 7 case of Hackard & Holt (the "Debtor"). According to the court's docket, the Debtor's chapter 7 petition was filed on August 16, 2009 (the "Petition Date").

3. As trustee, I have reviewed the schedules and Statement of Financial Affairs filed in the Debtor's case, have interviewed Michael Hackard ("Hackard"), the general partner in the Debtor who signed the Debtor's Voluntary Petition, schedules, and Statement of Financial Affairs, and I have communicated with the Debtor's counsel and Hackard's counsel regarding the Debtor, its bankruptcy case, and its former business operations. I have interviewed various former staff of the Debtor, and have

reviewed various records of the Debtor and of Michael A. Hackard, a Professional Law Corporation, which I understand to be Hackard's current law firm. Over a course of several months, I have conducted and concluded the Meeting of Creditors in the case, and I met with representatives of the Debtor's secured lender and other creditors.

4. Based on the sources of information described above, I am informed and on that basis believe that before it ceased operations, the Debtor operated a law firm. I understand that the Debtor's attorneys provided legal services of various types, including contingency-fee representation to plaintiffs in mass product-liability cases, specifically cases arising out of the use of diet and other drugs. The Debtor ceased operation of its business in or about July 2009, and its law office remains closed today.

5. Hereinafter, the various claims being handled by the Debtor as of the Petition Date in which the Debtor anticipated the recovery of attorney fees will be referred to collectively as the "Claims." The Claims are identified in the B-schedule filed by the Debtor in its chapter 7 case. While the Debtor identified three basic categories of Claims in its B-schedule, in its own documents it further breaks them down into various categories that help identify them in regard to the relevant defendant and the procedural status of the cases. Among such groups are the "Matrix Cases," the "7th Amendment Cases," and the "PPH Cases." As of the Petition Date, there were numerous Matrix Cases and 7th Amendment Cases, and a total of nine (9) PPH Cases.

6. Based on communications with representatives of Napoli Bern Ripka & Associates, L.L.P. ("Napoli Bern"), on the Debtor's records, and on other information, I understand that as of the Petition Date, Napoli Bern had associated into a number of the Claims, as co-counsel to the Debtor, although specific agreements regarding the sharing of attorneys' fees had not been reached in some of the Claims. I also came to understand that in regard to some of the Claims, Napoli Bern and the Debtor had agreed that Napoli Bern would become associated as counsel, but no formal association of counsel had yet been signed, and no agreement had been reached in regard to the sharing of fees.

7. I was involved in the communications and negotiations that resulted in a written Agreement (the "Bern Agreement") between Napoli Bern and me, subject to this court's approval, to state all of the Claims in which Napoli Bern shall be associated as co-counsel (to the exclusion of any other of the Claims), to set the share of attorneys' fees for those of the Claims in which NB is designated as co-counsel, to provide for NB's formal association as co-counsel in the designated Claims only, and to resolve other issues. A true and correct copy of court order approving the Bern Agreement is submitted herewith as Exhibit 1 (without exhibits not relevant to the accompanying motion).

8. In regard to some of the Claims, the Debtor became counsel of record as a result of entering various co-counsel agreements with other law firms. In some instances, the Debtor became counsel by way of "referrals" from other law firms. Under various co-counsel agreements, the Debtor and other law firms agreed to share attorneys' fees that might be earned in connection with the diet-drug claims of designated clients, and in most instances would also agree in regard to nature and amount of services that each firm was to provide to the relevant client or clients.

9. Among the Claims subject of the Bern Agreement are four PPH cases (collectively, the "Four Claims") that were subject of an October 3, 2007 letter agreement (the "Letter Agreement") between, on the one hand, Dexter & Dexter and E.L. Anderson & Associates, P.A. (collectively, "Dexter"), and, on the other, the Debtor. A true and correct copy of the Letter Agreement (with names of the clients partly redacted) is submitted herewith as Exhibit 2.

10. Sometime in late 2009, the Four Claims were settled through Napoli Bern's efforts. Under the Bern Agreement, retired Judge Richard L. Gilbert ("Judge Gilbert") was authorized by this court to continue his duties as a Special Master appointed by the United States District Court to disburse the proceeds of many of the Claims, including the Four Claims. Accordingly, Judge Gilbert proposed to pay out attorneys' fees to interested parties, including Napoli Bern, but I objected to the share

that Judge Gilbert proposed to pay to Dexter. As a consequence, with the parties' agreement, Judge Gilbert distributed attorneys' fees to Napoli Bern, but retained the sum of $273,333.32 (the "Disputed Fees") pending resolution of a dispute between Dexter, on the one hand, and the Trustee and LFG on the other, in regard to the bankruptcy's estate's entitlement to a share thereof. The Disputed Fees consist of 1/3 of all attorneys' fees payable in connection with the Four Claims.

11. While Dexter claimed to be entitled to all of the Disputed Fees under its own interpretation of the Dexter Agreement and understanding of the circumstances of this case, I claimed to be entitled to two-thirds of the Disputed Fees based on my interpretation of the Dexter Agreement and my understanding of circumstances. Through negotiations by counsel, including counsel for secured lender LawFinance Group, Inc., as agent for LFG National Capital, L.L.C. ("LFG"), Dexter, on the one hand, and LFG and I, on the other, have reached an agreement to settle the disputes between us, which agreement has been reduced to writing in the form of a Settlement Agreement. A true and correct copy of that Settlement Agreement is submitted herewith as Exhibit 3.

12. I believe that this court's approval of the Settlement Agreement is in the best interests of the estate, as it will permit the estate promptly to collect the sum of $124,902.31, or 45% of the Disputed Fees, without the need for costly and lengthy litigation, the outcome of which is uncertain.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at _Sacramento_, California on the date set forth below.

Date: 10/24/10         _____
                            Susan K. Smith